UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| PAUL BELLARD | CIVIL ACTION NO.: |
| VERSUS | JUDGE: |
| SHERIFF K P GIBSON, individually and in his capacity as the Sheriff of the Acadia Parish Sheriff's Office, DAVEY ANGLIN, individually and in his capacity as a duly commissioned law enforcement officer of the Acadia Parish Sheriff's Office, ZACHARY BREAUD, individually and in his capacity as a duly commissioned law enforcement officer of the Acadia Parish Sheriff's Office, and ABC INSURANCE COMPANY | MAGISTRATE: |
| | JURY TRIAL DEMANDED |

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

**COMPLAINT FOR DAMAGES**

//////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

**NOW INTO COURT**, through undersigned counsel, comes the Plaintiff, **PAUL BELLARD**, a person of the full age of majority and domiciled in Acadia Parish, State of Louisiana, who respectfully represents the following:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution. This matter also raises supplemental state law claims, relative to the actions of all named defendants herein; more specifically:

## MADE DEFENDANTS

2. The Defendants named in the matter are as follows:

   a) **SHERIFF KP GIBSON**, (hereinafter referred to as "**GIBSON**") individually and in his capacity as Sheriff of the Acadia Parish Sherrif's Office, being a person of full age of majority, who can be served at 1037 Capitol Avenue, Crowley, Louisiana 70526;

   b) **DAVEY ANGLIN**, (hereinafter referred to as "**ANGLIN**") individually and in his capacity as a duly commissioned law enforcement officer for the Acadia Parish Sheriff's Office, being a person of full age of majority, who can be served at 1037 Capitol Avenue, Crowley, Louisiana 70526;

   c) **ZACHARY BREAUD**, (hereinafter referred to as "**BREAUD")** individually and in his capacity as a duly commissioned law enforcement officer for the Acadia Parish Sheriff's Office, being a person of full age of majority, who can be served at 1037 Capitol Avenue, Crowley, Louisiana 70526;

   d) **ABC INSURANCE COMPANY**, an insurance company authorized to do, and doing business in the State of Louisiana, providing general liability coverage for all Defendants named herein for any and all acts and damages occurring from the incidents giving rise to this complaint.

## JURISDICTION AND VENUE

3. This cause is grounded in 28 U.S.C. § 1331 *et seq.* and 1343(a)(3), 1343(a)(4), and 1367(a) as this suit raises questions of federal civil rights law and is also brought pursuant to 42 U.S.C. §1983 *et seq*. and other related provisions. This action is authorized by 42 U.S.C. §1981, *et seq.*, especially §1983, to redress the deprivation under color of law, statute, ordinance, regulation, custom, and/or usage of rights guaranteed to **BELLARD** by the Fourth and Fourteenth Amendments to the United States Constitution.

4. **BELLARD** brings this action in this Court pursuant to 28 U.S.C. § 1391(b), as the transactional events constituting the alleged tortious behavior arose and occurred within Acadia Parish, Louisiana, which is situated in the Western District of Louisiana, Lafayette Division. This action is in conformity with Fed. Rules Civ. P. Art. 4(d). **BELLARD** also seeks

relief afforded under state law, including but not limited to La. Civil Code Article 2315 and La. Civil Code Article 2315.6.

5. Collectively, **DEFENDANTS** have acted as tortfeasors and are therefore liable both jointly and *insolido*, as their acts committed under color of the statutes, customs, ordinances, and usage of the State of Louisiana, Parish of Acadia, and the Town of Church Point, by depriving **BELLARD** of his rights secured by the Constitution and laws of the United States.

**PARTY PLAINTIFF**

6. **PAUL BELLARD ("BELLARD"),** is of suitable age and capacity to file this lawsuit. At all times relevant herein, **BELLARD** was a resident of the town of Church Point, situated in Acadia Parish which is located in the Western District of Louisiana.

**STATEMENT OF FACTS**

7. On or about May 5, 2024, and upon information and belief, Defendant **DAVEY ANGLIN**, a deputy with the Acadia Parish Sheriff's Office Crime Suppression Unit, conducted a traffic stop on Plaintiff, **PAUL BELLARD**, allegedly for a license plate light violation (La. R.S. 32:304).

8. Upon initiating the stop, Deputy **ANGLIN** informed **BELLARD** that the reason for the stop was a non-functioning license plate light. No other traffic violations were mentioned at that time. Allegations of additional violations, including failure to maintain lane, were not raised until after **BELLARD's** arrest and appear to be post hoc justifications unsupported by contemporaneous video evidence.

9. At the time of the stop, **BELLARD** was engaged in a telephone call attempting to contact his legal counsel. **BELLARD** remained calm, non-confrontational, and made no aggressive or threatening movements.

10. When ordered to exit the vehicle, **BELLARD** expressed concerns for his safety and that of the officers, respectfully requesting to remain inside the vehicle. Despite his non-threatening conduct, **BELLARD** was repeatedly ordered to exit and was advised that he would be forcibly removed if he did not comply.

11. **BELLARD** ultimately complied with the officers' commands and exited the vehicle slowly and without incident.

12. Upon exiting the car **BELLARD** raised his hands above his head and faced the car in a non-confrontational manner.

13. After turning his back, he was instructed to terminate his phone call. Without issuing any further verbal commands or providing **BELLARD** with the opportunity to voluntarily submit to detention, Defendant **BREAUD** and/or **ANGLIN** aggressively seized **BELLARD**, placed him in a chokehold, and violently slammed him to the ground.

14. During this takedown, one or both officers drove their body weight into **BELLARD's** back while he was in a face-down position—despite the absence of any resistance—causing immediate and serious injury.

15. In effectuating the arrest, **ANGLIN** and **BREAUD** improperly hyperextended **BELLARD**'s arm by pulling it upward and backward beyond its natural range of motion. Rather than following established law enforcement procedure, which require controlled, deliberate movements and proper joint alignment, the officers put **BELLARD's** arm in an unsafe angle while applying excessive pressure to his back, resulting in a serious fracture to his upper arm.

16. As a direct result of the force used during this encounter, **BELLARD** sustained a serious fracture to his upper arm. He was not resisting arrest nor was he attempting to flee or otherwise

pose a threat to officer safety. Body-worn camera footage does not reflect any active resistance on the part of **BELLARD** and contradicts any assertion to the contrary.

17. **BELLARD** was subsequently transported to Ochsner Acadia General Hospital, where he was diagnosed with a displaced upper arm fracture and symptoms of syncope caused by the pain of the injury. **BELLARD** underwent surgery to repair the fracture and is currently under medical care in anticipation of a second surgery related to complications and ongoing recovery. **BELLARD** faces a protracted recovery period and continuing physical limitations resulting from the injury.

18. Following the use of excessive force, Defendants **ANGLIN** and **BREAUD** knowingly and intentionally initiated criminal charges against **BELLARD** without probable cause and with malicious intent. These charges included resisting an officer with force or violence—an allegation directly contradicted by body-worn camera footage, which shows that **BELLARD** neither resisted nor posed a threat to officer safety. The prosecution of these charges was undertaken to conceal the officers' own misconduct and to retroactively justify the excessive and unlawful force used during the arrest. As a result, **BELLARD** was subjected to unwarranted legal proceedings, reputational harm, and additional emotional and psychological trauma.

## CAUSES OF ACTION

### Count One: Violation of 42: U.S.C. 1983: Use of Excessive Force In Violation of Fourth and Fourteenth Amendment Rights (Defendants Davey Anglin and Zachary Breaud )

19. The allegations of paragraphs 1 through 18 are incorporated herein by reference.

20. As described above, the actions of Defendants **ANGLIN** and **BREAUD**, in using excessive force against **BELLARD**, were performed under the color of state law and violated

**BELLARD**'s rights guaranteed under the Fourteenth Amendment to the United States Constitution.

21. The Fourth Amendment protects individuals from the use of excessive force during an investigatory stop or arrest. This right is clearly established, and its violation gives rise to a cause of action under 42 U.S.C. § 1983.

22. The force used by Defendants **ANGLIN** and **BREAUD** against **BELLARD** was objectively unreasonable in light of the circumstances. **BELLARD** did not pose a threat to the officers or others, was not resisting or attempting to evade arrest, and made no sudden or aggressive movements. No commands to submit to arrest or place his hands behind his back were issued prior to the use of force.

23. Despite **BELLARD's** compliant and non-threatening conduct, Defendants employed immediate and violent physical force, including placing **BELLARD** in a chokehold and slamming him to the ground.

24. Standard handcuffing protocol mandates that officers guide the arm below shoulder level, keeping the elbow slightly bent and the wrist in a neutral position while bringing the hand toward the small of the back. This technique is designed specifically to avoid joint damage or bone fractures. The maneuver used by **ANGLIN** and **BREAUD** constituted a dangerous hyperextension of the shoulder joint—a well-known cause of upper arm fractures—and reflets a reckless disregard for **BELLARD's** safety and a deliberate indifference to his constitutional rights.

25. The use of force employed by Defendants **ANGLIN** and **BREAUD** was excessive, unreasonable, and grossly disproportionate to the circumstances. The actions of the

Defendants were not justified by any immediate threat, resistance, or failure to comply, and reflect a deliberate indifference to **BELLARD's** constitutional rights.

26. As a result of the concerted unlawful and malicious physical abuse of **BELLARD**, **ANGLIN** and **BREAUD** acted with deliberate indifference and callous disregard of **BELLARD'S** rights. **ANGLIN** and **BREAUD** deprived **BELLARD** of his right to equal protection of the laws and impeded the due course of justice, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

27. The actions of excessive force against **BELLARD** were the direct and proximate cause of severe and ongoing physical and psychological injuries to Plaintiff.

28. The level of force used was not necessary to accomplish any lawful objective and was not justified by any threat or resistance. It was grossly disproportionate to the need presented, and no reasonable officer in the same circumstances would have believed such force to be appropriate.

29. The conduct of Defendants **ANGLIN** and **BREAUD** was willful, malicious, and in reckless disregard of **BELLARD's** constitutional rights. Their actions constituted a clear violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.

30. As a result of the actions and/or inactions of **ANGLIN** and **BREAUD** as alleged herein, Plaintiff has suffered damages including (1) loss of liberty and freedom; (2) mental and emotional injury; (3) physical injury, pain, and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

31. **BELLARD** is entitled to compensatory damages for the injuries sustained as a direct result of the **ANGLIN** and **BREAUD**'s unlawful conduct. These damages are intended to make

Plaintiff whole by addressing the harm suffered due to the excessive and unjustified use of force.

32. **BELLARD** is also entitled to punitive damages under 42 U.S.C. § 1983. These are available where a defendant's actions are motivated by evil intent or demonstrate a reckless or callous indifference to federally protected rights.

33. **BELLARD** also seeks attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Count Two: Violation of 42 U.S.C. § 1983**
**Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments**
**(Defendants Davey Anglin and Zachary Breaud)**

34. The allegations of paragraphs 1 through 33 are incorporated herein by reference.

35. The Fourth Amendment protects individuals from unreasonable seizures, including the initiation of criminal proceedings without probable cause. This protection applies through 42 U.S.C. § 1983 and was clearly established at the time of the events in question.

36. As clarified by the United States Supreme Court in *Thompson v. Clark*, 596 U.S. 36 (2022), a plaintiff bringing a Fourth Amendment malicious prosecution claim under § 1983 must show that (1) the defendant initiated a criminal proceeding against the plaintiff without probable cause, (2) the proceeding ended in the plaintiff's favor, (3) the defendant acted with malice, and (4) the prosecution caused a deprivation of liberty consistent with a Fourth Amendment seizure.

37. Defendants **ANGLIN** and **BREAUD** initiated and caused the filing of criminal charges against Plaintiff, including resisting an officer with force or violence, despite knowing the allegations were false and wholly unsupported by probable cause. Body-worn camera footage confirms that **BELLARD** did not resist, did not act aggressively, and was not given any commands prior to the use of force.

38. The charges were pursued with malice and for the improper purpose of justifying the use of excessive force and concealing the officers' own misconduct. Defendants deliberately mischaracterized the events in written reports and failed to disclose exculpatory video evidence clearly contradicting their claims.

39. On or about April 15, 2025, the State of Louisiana dismissed the resisting arrest charge against Plaintiff. This dismissal constitutes a favorable termination of the criminal proceedings, as required under *Thompson v. Clark.*

40. As a direct and proximate result of Defendants' malicious prosecution, Plaintiff suffered a loss of liberty, was forced to endure legal proceedings, and incurred reputational damage, emotional distress, and significant financial hardship defending himself against charges known to be baseless at the time they were filed.

41. The conduct of Defendants **ANGLIN** and **BREAUD** was willful, malicious, and undertaken with reckless disregard for Plaintiff's constitutional rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

**Count Three: Violation of 42: U.S.C. 1983: *Monell* Claims Acadia Parish Sheriff's Office Policies, Customs, And Practices, Officer Employment, Training, Supervision and Employment (Defendants Sheriff KP Gibson in His Individual and Official Capacity and Acadia Parish Sheriff's Office)**

42. **BELLARD** incorporates and reasserts the allegations in the paragraphs above as though full set forth herein.

43. At all times relevant herein, each of the APSO Officers named and involved in the constitutional and statutory violations, which resulted in **BELLARD** sustaining severe physical and/or mental damages, were employees of APSO Sheriff **GIBSON** and were acting

under color of law by virtue of their authority as APSO Deputies and were in the course and scope of their employment.

44. As a direct and proximate result of the actions of the APSO Deputies and the deliberately indifferent policies, practices and customs of APSO Sheriff **GIBSON**, the constitutional and statutory rights, federal and state, of **BELLARD** were violated, and he sustained injuries and damages suffered for which the **ANGLIN, BREAUD,** and **GIBSON** are liable, as set forth herein.

45. APSO Sheriff **GIBSON**, in his official capacity, and as a final policy maker, was under a constitutional duty: 1) to properly determine if his officers, including Deputy **ANGLIN and BREAUD** were qualified to serve as a sheriff's deputy; 2) to provide his officers, including Deputy **ANGLIN and BREAUD** with proper policy guidance to perform law enforcement functions including stops, seizures, apprehension of suspects/inmates, reasonable use of force, and the protection of individual civil rights, among other things; and 4) to properly investigate, discipline and hold accountable his deputies, including Deputy **ANGLIN** and **BREAUD**, for violation of the policies, practices and customs of the APSO.

46. **BELLARD** avers that APSO Sheriff **GIBSON** failed to properly screen, hire, train, investigate and discipline deputies, including Deputy ANGLIN and BREAUD.

47. **GIBSON's** below-referenced policies, practices and/or customs demonstrated a deliberate indifference to the constitutional rights of the public, including **BELLARD's**, and were the proximate cause of the injuries and damages sustained by **BELLARD**, and evidenced a reckless or callous indifference to the federally protected rights to the **BELLARD**.

   a. Failure to properly hire and screen applicants to determine their fitness, both mentally, physically and ethically, to perform the duties of law enforcement officers;

b. Failure to have adequate and proper written policy guidance regarding the obvious and recurring law enforcement activities with respect to: 1) stops; 2) crisis intervention; 3.) seizures; 4) apprehension and booking of suspects/inmates; 5) use of force; and 6) protection of individual's civil rights;

c. Failure to adequately train officers, including Deputy **ANGLIN and BREAUD**, regarding obvious and recurring law enforcement activities with respect to: 1) stops; 2) crisis intervention; 3.) seizures; 4) apprehension and booking of suspects/inmates; 5) use of force; 6) protection of individual's civil rights; and 8) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including **BELLARD PAUL BELLARD**;

d. Failure to train and educate officers with respect to appropriate levels of force and application which **GIBSON** knew, must have known or should have known, that officers were utilizing in the field and the jail, and which posed a serious risk of injury including the improper use of force, in deliberate indifference to and reckless disregard of the public at large, including the **BELLARD PAUL BELLARD**

e. Failure to adequately supervise, monitor and evaluate the performance of his deputies, including Deputy **ANGLIN** and **BREAUD**, regarding their compliance with the laws and policies, practices and customs with respect to: 1) stops; 2) crisis intervention; 3.) seizures; 4) apprehension and booking of suspects/inmates; 5) use of force; 6) protection of individual's civil rights; and 7) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including **PAUL BELLARD.**

f. Failure to adequately respond to and investigate critical incidents and/or complaints by civilians regarding misconduct by APSO officers, including Deputy **ANGLIN** and **BREAUD**, with respect to: 1) stops; 2) crisis intervention; 3.) seizures; 4) apprehension and booking of suspects/inmates; 5) use of force; 6) protection of individual's civil rights; and 7) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including **BELLARD**.

48. APSO Sheriff **GIBSON**, is also directly responsible for the actions of the APSO deputy described herein, including Deputy **ANGLIN** and Deputy **BREAUD**, by virtue of the fact that he failed to require or perform an adequate investigation of the critical incident involving the injuries and psychological trauma inflicted upon **BELLARD**. Therefore, **GIBSON** effectively

ratified, condoned, and otherwise approved the conduct of APSO deputies in this matter and in all respects.

49. Sherrif **GIBSON** is also directly responsible for the actions of Deputies **ANGLIN** and **BREAUD** by virtue of his supervisory role and failure to address known or reasonably foreseeable risks within the department. Upon information and belief, **GIBSON** was or should have been aware that younger and less experienced deputies had been involved in incidents raising concerns about the use of excessive or improper force. Despite this knowledge, **GIBSON** failed to implement appropriate corrective actions, including enhanced supervision, targeted retraining, or disciplinary accountability. His failure to act in the face of a known or recurring risk effectively ratified the unconstitutional conduct at issue and proximately caused the injuries and constitutional violations suffered by **BELLARD.**

50. By failing to recognize or correct the deficiencies with his policies, practices and customs, APSO Sheriff **GIBSON** consciously disregarded the known and foreseeable consequences thereof.

51. APSO Sheriff **GIBSON**'s deliberate indifferent policies, practices and customs were the moving force behind the **BELLARD's** injuries and the deprivation of his constitutional rights.

52. There is a direct causal link between the policies, practices and customs and the violation of **BELLARD's** constitutional rights.

53. As a direct and proximate cause of the foregoing policies, practices and customs of APSO Sheriff **GIBSON,** the violation of the constitutional rights of the public by the APSO deputies was substantially certain to occur.

54. The actions of the APSO deputies described herein, which were proximately caused by the policies, practices, customs and usages of APSO Sheriff GIBSON were the underlying causes of the **BELLARD**'s injuries.

**Count Four: Violation of Louisiana Constitution and State Law against all Defendants in all Capacities.**

55. **BELLARD** incorporates and reasserts the allegations in the paragraphs above as though fully set forth herein.

56. The actions of all **ANGLIN** and **BREAUD** as described herein, were done with negligence, gross negligence and/or intentionally and were arbitrary, capricious and unreasonable, in violation of the Louisiana constitutional and statutory law.

57. The actions of the **ANGLIN** and **BREAUD** as described herein resulted in the assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, loss of liberty, and violation of the rights to be secure against unreasonable seizures, the unjustifiable and excessive use of force, and the right to due process of law.

58. The actions of the **ANGLIN** and **BREAUD** caused or contributed to the physical and mental injuries sustained by **BELLARD** and caused for contributed to the mental anguish to **BELLARD**.

59. By virtue of their professional roles and by answering the call for service, the **ANGLIN** and **BREAUD** had a duty to exercise due care and further assumed that duty by virtue of their employment with APSO.

60. The actions and omissions of the defendants herein were within the course and scope of their employment, and APSO Sheriff **GIBSON** is vicariously liable for the acts and omissions of Deputy **ANGLIN** and **BREAUD** in accordance with Louisiana law.

## CAUSATION

61. The actions of the **ANGLIN, BREAUD,** and **GIBSON** described herein, were the proximate cause of the injuries and damages suffered by **BELLARD**, and as a result, have been injured and suffered damages as set forth herein.

62. The **ANGLIN, BREAUD,** and **GIBSON** described herein are jointly and severally liable for the wrongs complained of herein, either by virtue of direct participation or by virtue of encouraging, aiding, abetting, conspiring, committing and/or ratifying or condoning the commission of the above-described acts.

63. The actions of the **ANGLIN, BREAUD,** and **GIBSON** described herein were negligent, grossly negligent, intentional, arbitrary, capricious and unreasonable and/or deliberately indifferent.

64. The actions and omissions of the **ANGLIN, BREAUD,** and **GIBSON** as described herein, were intentional, malicious, reckless and performed with malice entitled **BELLARD** to a substantial award of punitive damages.

## DAMAGES

65. As a direct and proximate result of the **ANGLIN, BREAUD,** and **GIBSON** wrongful acts and omissions as described herein. **BELLARD** suffered severe injuries, for which he seeks and is entitled to recover damages from **ANGLIN, BREAUD,** and **GIBSON**, jointly and severally, for these injuries, to the fullest extent possible, under both federal and state law, as follows:

    a. **BELLARD** suffered severe physical, mental and emotional injuries, pain and suffering, anguish, loss of liberty, loss of enjoyment of life, as well as fear and terror of death and/or great bodily harm.

b. Punitive damages are sought against **ANGLIN** and **BREUAD** described herein, each in their individual capacities.

## JURY TRIAL REQUESTED

66. **BELLARD** requests a jury in this case as to all portions of this matter to which a jury trial is available.

## PRAYER FOR RELIEF

**WHEREFORE, PETITIONER PAUL BELLARD**, prays that after due proceedings are had, that there be judgment in his favor and against all **DEFENDANTS**, jointly and severally, as follows:

1. Compensatory Damages;
2. Punitive Damages as warranted;
3. Past, present and future pain and suffering;
4. Past, present and future mental anguish;
5. Past, present, and future medical expenses,
6. Loss of enjoyment of life;
6. Inconvenience;

.

.

RESPECTFULLY SUBMITTED:

LEJEUNE AND ASSOCIATES,

/s/ J. Clay LeJeune

_________________________________

J. CLAY LEJEUNE (No. 26068)
1017 Lafayette St, Suite B
LAFAYETTE, LA 70501
337-484-1430
337-484-1439 (FAX)
clay@jclaylejeune.com
*Attorney for PAUL BELLARD*